# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **DARYL A. HIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:13-CV-00367** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **DUSTIN COX, Individually, ALLYSON S.** | ) | |
| **ABBOTT, ADAG, Individually, DAVID** | ) | |
| **BRAGG, CIRCUIT JUDGE, Individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the court are several motions that collectively request dismissal of plaintiff Daryl Hight's claims. Defendant Tennessee Circuit Court Judge David Bragg ("Judge Bragg") has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Docket No. 11), defendant Tennessee Assistant District Attorney General Allyson S. Abbott ("ADAG Abbott") has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Docket No. 13), and defendant Rutherford County Sheriff Department Officer Dustin Cox ("Officer Cox") has filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (Docket No. 18). Hight filed a combined Response in opposition to the defendants' motions (Docket No. 26), to which Judge Bragg and ADAG Abbott filed a combined Reply (Docket No. 31), and Officer Cox filed a separate Reply (Docket No. 32). Officer Cox has also filed a Motion for Judicial Notice (Docket No. 21), to which Hight did not file a response.

For the reasons stated herein, the defendants' motions will be granted, Hight's claim for malicious prosecution against Officer Cox will be dismissed without prejudice, Hight's

remaining claims will be dismissed with prejudice, and the court will grant Hight leave to amend his malicious prosecution claim against Officer Cox.

## BACKGROUND

### I.    Factual Background[1]

This case has its genesis in a January 28, 2011 incident involving Hight's son, Brandon Hight ("Brandon"), who, at the time, was a student at Smyrna High School in Smyrna, Tennessee.  During that time frame, Officer Cox of the Rutherford County Sheriff's Office was serving as a "Student Resource Officer" at the school.

On January 28, 2011, Officer Cox, purportedly acting on a belief that Brandon was in possession of a firearm on school grounds, removed Brandon from class, patted him down, searched his locker, and "ransacked" Brandon's car while ostensibly searching it for firearms. Inside the car, Officer Cox found a small First Aid kit, which contained a folding knife.  After discovering the knife, Officer Cox demanded to speak with Brandon's father (Hight) and left

---

[1]The facts are drawn from (1) the plaintiff's Complaint and (2) records related to underlying (and now-concluded) criminal proceedings against Hight in *State of Tennessee v. Daryl Hight*, Rutherford County Circuit Court No. F-66667 ("Criminal Case").  As explained herein, the conduct of Officer Cox, ADAG Abbott, and Judge Bragg with respect to the Criminal Case forms the alleged factual basis for Hight's claims, placing the state court proceedings squarely at issue here.  Hight has not formally opposed Cox's Motion for Judicial Notice, which asks the court to take judicial notice of the state court proceedings.  Regardless, the state court records introduced by the defendants satisfy Fed. R. Evid. 201(b) and are the types of records of which courts routinely take judicial notice.  *See, e.g.*, *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).  Furthermore, courts taking judicial notice of state court records may consider those records in ruling on a Rule 12 motion without converting that motion into a motion for summary judgment.  *See Scarso v. Cuyahoga Cnty. Dep't of Human Serv.*, 1990 WL 169645, at *2 (6th Cir. 1990) ("In determining the legal efficacy of plaintiff's complaint, the lower court properly took judicial notice of facts in the public record, specifically the records of state court proceedings."); *Plassman v. City of Wauseon*, 85 F.3d 629 (Table), 1996 WL 254662, at *4 (6th Cir. 1996) (holding that trial court erred when, based on references to relevant state court proceedings. it converted Rule 12 motion into a Rule 56 motion).

Hight a voicemail. When Hight returned the call, Officer Cox and Hight had a verbal altercation, in which Hight accused Officer Cox of harassing his son. After the call, Officer Cox told Brandon he was expelled and escorted him off the school premises.

Believing that Officer Cox had acted inappropriately with respect to Brandon and/or outside of his authority by calling Hight directly, Hight filed written grievances against Officer Cox with the Rutherford County Board of Education. As best the court can discern from the Complaint, Hight filed these grievances within 2 days of the underlying incident.[2] On January 31, 2011 – after Hight had filed the grievances against Officer Cox – Officer Cox signed a sworn Affidavit of Complaint against Hight and obtained a warrant for Hight's arrest for the offense of "Retaliation of Past Action" under Tenn. Code Ann. § 39-16-510.[3] In the affidavit, Officer Cox

---

[2]The Complaint is not a model of clarity. At times, it references the names of individuals without explaining what positions those individuals held and how their roles related to the underlying events, (*see, e.g.*, Compl. ¶¶ 12-16 (referencing, without explanation, a "Mr. Harris", a "Mr. Gill," and a "Ms. Sutherland")), contains malapropisms that require some degree of inference to decipher (*see, e.g.*, ¶ 3 (stating, with respect to information provided to Cox about Brandon's alleged firearm: "This information was merely rumors, had no basis for truth [sic] and no probable cause or reasonable suspension [sic] existed.[]")), and fails to provide relevant dates for key events, such as the date on which Hight complained about Officer Cox, as well as the dates of Hight's arrest, probable cause hearing, indictment, and the like. Particularly in light of necessary context gleaned from the Criminal Case record, the court has endeavored to provide a coherent chronology of the relevant events.

[3]The statute reads as follows:

> A person commits the offense of retaliation for past action who harms or threatens to harm a witness at an official proceeding, judge, district attorney general . . . or a law enforcement officer, clerk, juror, or former juror, . . . by any unlawful act in retaliation for anything the witness, judge, . . . or a law enforcement officer, clerk, or juror did in an official capacity as witness, judge, or a law enforcement officer, clerk, or juror.

Tenn. Code. Ann. § 36-16-510(a)(1) (current 2013). Violating the statute is a felony. *Id.* § 36-16-510(b). This broadly worded statute "seeks to prohibit threats of violence against specific individuals involved in the judicial process." *State v. Lanier*, 81 S.W.3d 776, 781 (Tenn. Crim.

averred that, during their initial telephone discussion, "Mr. Hight became irate and belligerent." (Docket No. 21, Ex. 1, Affidavit of Complaint.)  Officer Cox also averred that, "[d]uring the course of approximately four phone calls to affiant, Mr. Hight threatened to kill affiant two times" and that "Mr. Hight also threatened to come to SHS [Smyrna High School, presumably] and cause bodily harm to affiant."  (*Id.*)  Hight alleges that Officer Cox swore out the warrant in retaliation for Hight having filed grievances against Officer Cox.[4]  Hight also alleges that there was no probable cause for his arrest and subsequent prosecution.  However, as discussed in the court's analysis herein, the Complaint at no point alleges that the averments in Officer Cox's Affidavit of Complaint were actually false, let alone identifies any particular falsehoods or material omissions of fact.

On February 7, 2011, Hight was arrested.  Hight alleges that, while in custody, a law enforcement officer – who was a "friend" of Cox — punched Hight in the testicles.  The Complaint does not allege Officer Cox was present for, participated in, or otherwise participated in this alleged incident.

The criminal case against Hight was filed in the Rutherford County General Sessions Court.  (*See* Docket No. 21, Ex. 2.)  Hight was scheduled to appear before the Rutherford County General Sessions Court on May 9, 2011 but received a continuance to June 13, 2011.  A preliminary hearing was held on June 13, 2011, at which probable cause apparently was found to

_____

App. 2000).  The Tennessee Court of Appeals has found that "threats of violence" are criminalized under the statute, that criminalizing such threats does not violate federal or Tennessee free speech rights, and that threats of violence can support a conviction regardless of whether the threats are "likely to produce unlawful activity."  *Id.*

[4]Officer Cox's affidavit also referenced that "he has had recent prior contact with Mr. Hight regarding a reported separate situation regarding Mr. Hight's son."  However, the record before this court does not explain what "recent prior contact" Officer Cox was referencing.

exist for Hight's arrest.  As a consequence, on that date, Hight was bound over to the grand jury in the case of *State of Tennessee v. Daryl Hight*, Case No. F-66667.[5]  On August 3, 2011, the grand jury returned an indictment, charging that Hight "did unlawfully and knowingly threaten or harm a witness at an official proceeding, a law enforcement officer, to-wit: DUSTIN COX, RCSO, by any unlawful act in retaliation for anything the law enforcement officer [] did in an official capacity as a law enforcement officer, in violation of T.C.A. 39-16-510."  (Docket No. 13, Ex. 1.)

Circuit Court Judge Bragg presided over the criminal proceedings against Hight in *State of Tennessee v. Hight*, in which Hight was represented by counsel.  ADAG Abbott served as the State of Tennessee's prosecutor.  Hight alleges in conclusory terms that ADAG "acted in such an intentional and outrageous manner as to deny the Plaintiff his constitutionally protected rights to due process of law."  (Compl. ¶ 25.)  Hight alleges that ADAG Abbott (1) "took affirmative action to deny [Hight] access to exculpatory evidence," (2) filed "a motion to amend the statute that his charges were based upon," (3) prosecuted Hight despite the lack of any evidence supporting the charges; and (4) "unduly and maliciously pressed [Hight] into agreeing to not pursue civil litigation against any of the participating governmental entities in order for the District Attorney to agree to dismiss his criminal charges," which Hight alleges "[t]he District Attorney acknowledged" was "not within the scope and authority of [ADAG Abbott's] duties."

During the proceedings, Judge Bragg ruled on a number of motions, including a motion

---

[5]Hight's Complaint does not address the preliminary hearing, nor do the records introduced by the defendants shed any light on those proceedings beyond the fact that probable cause presumably was found.  Be that as it may, the court notes that, at least by the end of the proceedings in Circuit Court, Hight's counsel in this lawsuit apparently also served as Hight's counsel in the Criminal Case.

by the State of Tennessee seeking to amend the indictment against Hight to remove extraneous language therefrom. (Docket No. 13, Ex. 2.) In an order addressing several motions filed by the state and by Hight, Judge Bragg granted the state's motion to amend the indictment. (Docket No. 13, Ex. 3.) Hight alleges that Judge Bragg "knowingly violated" Hight's rights by "ordering the statute amended."[6] (Compl. ¶ 6.) Hight also alleges that Judge Bragg "knowingly violated [Hight's] constitutional rights by allowing SRO Cox's personal [sic] file to be tampered with prior to it being submitted to the court, refusing to address the fact that all disciplinary actions in SRO Cox's file had be [sic] removed, sealed the file and threatened the Plaintiff's counsel with sanctions if he continued to seek access to sealed records." (*Id.* ¶ 29.)

On April 24, 2012, all criminal charges against Hight were dismissed with the consent of both Hight and the state. In the Order of Dismissal, the court ordered that "[t]his dismissal constitutes full and final settlement of all matters related to this cause and the incidents leading up to and following the same, both criminally and civilly." (Docket No. 21, Ex. 3 (emphasis added).) On behalf of Hight, the Order of Dismissal was approved for entry by "S. Sirgo," whom the court presumes is the same counsel now representing Hight in this lawsuit.

## II. <u>Hight's Complaint</u>

On April 19, 2013, Hight filed this lawsuit. Hight appears to assert the following claims under 42 U.S.C. § 1983 and/or "State Law" (presumably Tennessee law):

    (1)      Claims against Officer Cox for unlawful arrest, malicious prosecution, and

---

[6]In that motion, the state asked the court to strike from the August 3, 2011 indictment the clause: "or harm a witness at an official proceeding". Although it is of limited relevance to the court's analysis of the pending motions here, the court notes that Hight believes (for reasons not specified here) that removing this language from the indictment violated his constitutional due process rights.

malicious abuse of process under both § 1983 and Tennessee law, abuse of authority under Tenn. Code Ann. § 39-16-402 and 18 U.S.C. § 242, and intentional infliction of emotional distress under Tennessee law.

(2)      Claims against both ADAG Abbott and Judge Bragg for malicious prosecution under 42 U.S.C. § 1983 and Tennessee law, abuse of authority under Tenn. Code Ann. § 39-16-402 and 18 U.S.C. § 242, claims under Tennessee law for conspiracy and intentional infliction of emotional distress, and a separate claim under Tennessee law against ADAG Abbott for tortious interference with business relationships.

Hight has sued all three defendants in their individual capacities only. He demands compensatory and punitive damages.

## III.    **The Defendants' Motions**

Judge Bragg and ADAG Abbott have filed Motions to Dismiss under Rule 12(b)(6), arguing that, *inter alia*, they are shielded from liability under the doctrines of absolute judicial and prosecutorial immunity, respectively. Officer Cox has filed a Motion for Judgment on the Pleadings under Rule 12(c), arguing that Hight's claims against him should be dismissed on multiple grounds.

## **RULE 12(B)(6) AND RULE 12(c) STANDARDS**

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards that govern a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012).

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## ANALYSIS

## I.  Claims Against Judge Bragg and ADAG Abbott

### A.  Claims Against ADAG Abbott

As a general matter, prosecutors are immune from suit under § 1983 for monetary damages when they act in their official, prosecutorial capacities. *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (holding that prosecutorial immunity encompasses immunity from § 1983 claims). In *Imbler*, the Supreme Court established the absolute immunity of a prosecutor from a civil suit for damages under § 1983 "in initiating a prosecution and in presenting the state's case." *Id.* The Court has subsequently confirmed that a prosecutor acting in her prosecutorial

role as advocate for the State is entitled to absolute immunity. *Burns v. Reed*, 500 U.S. 478, 487-92 (1991) (extending *Imbler* to accord absolute immunity to a prosecutor for participation in a probable cause hearing that led to the issuance of a search warrant, because he was acting in his prosecutorial role); *see also Manetta v. Macomb Cnty. Enforcement Team*, 141 F.3d 270, 279 (6th Cir. 1998); *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997) ("Investigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity[.]"), *cert. denied*, 522 U.S. 996, 118 S. Ct. 560, 139 L. Ed. 2d 401 (1997). The immunity accorded to prosecutors extends to all decisions to prosecute, except those "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (citations omitted).

Here, Hight's individual capacity claims against ADAG Abbott relate to her role as a prosecutor in the criminal proceedings against Hight, including allegedly denying Hight access to exculpatory evidence, continuing to pursue the criminal charges despite a lack of supporting evidence, pressuring Hight to release his potential civil claims in return for the state's agreement to dismiss the criminal charges, and moving to amend the indictment in a manner that Hight believes was unconstitutional. Even assuming these allegations to be true, they all relate to ADAG Abbott's role as an advocate for the State of Tennessee in the criminal case against Hight. Therefore, regardless of the veracity of Hight's allegations, ADAG Abbott is absolutely immune from Hight's individual capacity claims against her.

### B.      Claims Against Judge Bragg

"[J]udges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete

absence of any jurisdiction." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (internal

quotations marks and citations omitted); *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967).

"[J]udicial immunity is immunity from suit, not just from ultimate assessment of damages.

Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the

existence of which ordinarily cannot be resolved without engaging in discovery and eventual

trial." *Mireles v. Waco*, 502 U.S. 9, 10 (1991). "The scope of the judge's jurisdiction must be

construed broadly where the issue is immunity of the judge. A judge will not be deprived of

jurisdiction because the action he took was in error, was done maliciously, or was in excess of his

authority; rather, he will be subject to liability only when he has acted in the 'clear absence of

jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-67 (1978).

Tennessee has adopted a similar doctrine of judicial immunity. "The rule is that a civil

action for damages will not lie against a judge of a court of general jurisdiction for his judicial

acts if such acts were committed within the jurisdiction of his court." *Heath v. Corneliues*, 511

S.W.2d 683, 684 (Tenn. 1974). "If done within his jurisdiction neither the correctness of nor

motive behind the acts affects the immunity." *Id.*; *see also Harris v. Witt*, 552 S.W.2d 85, 85

(Tenn. 1977) ("It is generally recognized that a judge is immune from civil liability for bona fide

acts done in the exercise of his judicial function while acting within the limits of his

jurisdiction.")

Judge Bragg is a Circuit Court Judge for the Sixteenth Judicial District in Rutherford

County, Tennessee. *See* Tenn. Code Ann. § 16-2-50616)(A)(i) (authorizing and delineating the

jurisdiction of the Sixteenth Judicial District). The Circuit Court is a court of general jurisdiction,

Tenn. Code Ann. § 16-10-101, and has exclusive original jurisdiction over all crimes and

misdemeanors, unless otherwise provided. Tenn. Code Ann. § 16-10-102. The statute under which Hight was charged, Tenn. Code Ann. § 39-16-510, does not strip the Circuit Courts of their presumptive jurisdiction over the crime of "retaliation for past action" stated therein. Therefore, Judge Bragg appropriately exercised jurisdiction over the state's criminal case against Hight. All of the alleged acts by Judge Bragg of which Hight complains, including making decisions on motions and the like, were made in Judge Bragg's official capacity as a judge. Therefore, even accepting Hight's allegations as true, Judge Bragg is entitled to absolute judicial immunity from Hight's individual capacity claims.[7]

## II.    Claims Against Officer Cox

### A.    Excessive Force

Hight alleges a Fourth Amendment excessive force claim against Officer Cox. Hight has failed to respond to Cox's argument that this claim should be dismissed, which alone provides grounds for dismissal. Regardless, Hight's Complaint does not reference any conduct by Cox involving a use of force on Hight, constitutional or otherwise. Although Hight alleges that Cox's law enforcement officer "friend" struck Hight while Hight was in custody, Hight does not allege that Officer Cox struck him or that Cox was even aware of the incident. Thus, Hight has not provided any viable basis under which Officer Cox could be held liable for that other officer's conduct. Therefore, Hight's § 1983 excessive force claim will be dismissed. Hight's companion state law claim will also be dismissed for the same reasons. *See Partin v. Scott*, 2008 WL

---

[7]Furthermore, the allegations against Judge Bragg are conclusory and unsubstantiated. Thus, even if Judge Bragg were not entitled to absolute judicial immunity, Hight has not coherently alleged any improper conduct by Judge Bragg with respect to *State of Tennessee v. Hight*.

4922412, at *10 (Tenn. Ct. App. Nov. 13, 2008).[8]

## B. "Abuse of Authority" Claims

Hight purports to assert claims for "abuse of authority" under 18 U.S.C. § 242 and Tenn. Code Ann. § 39-16-402 against Officer Cox. However, 18 U.S.C. § 242 is a criminal statute that does not provide a civil cause of action or a civil remedy for damages. *See Timmon v. Wood*, 316 F. App'x 364, 365 (6th Cir. 2007); *In re Northeast Ohio Corr. Ctr.*, 211 F.3d 1269 (table), 2000 WL 553917, at *2 (6th Cir. 2000); *Watson v. Devlin*, 167 F. Supp. 638, 640 (E.D. Mich. 1958); *Salaam El v. City of Dearborn*, 2010 WL 582773, at *8 (E.D. Mich. 2010). Similarly, Tenn. Code § 39-16-402, which criminalizes "official misconduct," can only be brought by "indictment, presentment, or criminal information," not by a civil cause of action. *See Kidd v. Neff*, 2012 WL 4442526, at *5 (E.D. Tenn. 2012) (quoting Tenn. Code Ann § 39-16-402(f)). Therefore, the abuse of authority claims under both federal and state law will be dismissed with prejudice.[9]

## C. Unlawful Arrest

Hight alleges that his February 7, 2011 arrest was unlawful. To make out a claim for unlawful arrest under § 1983, a plaintiff must show that the arresting officer lacked probable cause to arrest him. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). Officer Cox argues

---

[8]Even if Hight had articulated otherwise viable excessive force claims against Cox, Hight's claims would be time-barred. As explained herein, Hight's § 1983 and state law excessive force claims are governed by Tennessee's one-year statute of limitations. Claims related to Hight's arrest would have accrued on or about the date of his arrest – February 7, 2011 – and, therefore, would have expired over a year before this lawsuit was filed.

[9]The court notes that Hight did not meaningfully respond to Cox's argument concerning 18 U.S.C. § 242, and Hight did not respond at all to Cox's argument concerning Tenn. Code. § 39-16-402.

that, *inter alia*, the unlawful arrest claim is barred by the statute of limitations.

The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007); *Fox v. Desoto*, 489 F.3d 227, 232-33 (6th Cir. 2007). The parties agree that a one-year limitations period, borrowed from Tennessee law, Tenn Code Ann. § 28-3-104(a)(3), applies in this case. *See Eidson*, 510 F.3d at 634. Although the Tennessee statute of limitations applies, the date on which that one-year statute of limitations begins to run in a § 1983 action is a question of federal law. *Id.* at 635. "Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* In determining when the cause of action accrues in a § 1983 action, the court must look to "what event should have alerted the typical lay person to protect his or her rights." *Id.* (quoting *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

"[A] claim for wrongful arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal process ends." *Fox*, 489 F.3d at 233 (citing *Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 1095-96 (2007)). Hight was arrested on February 7, 2011, was presumably released shortly thereafter, and was bound over to the grand jury on June 13, 2011. Even assuming *arguendo* that the latest of these dates applies here, Hight's claims are untimely – absent tolling or delay in accrual – because he did not file this lawsuit until April 19, 2013, a date well outside the one-year statute of limitations. *See Fox*, 489 F.3d at 233.

Here, relying on outdated Sixth Circuit precedent in *Shamaeizadeh v. Cunigan*, 182 F.3d 391 (6th Cir. 1999), Hight argues that the court should hold that, pursuant to *Heck v. Humphrey*,

512 U.S. 477, 484-87 (1994), accrual of his claim was deferred until April 24, 2012, the date on which the criminal proceedings against him were dismissed. In *Heck*, the Supreme Court articulated a deferred accrual doctrine for malicious prosecution claims, which the Sixth Circuit in *Shamaeizadeh* initially extended to the pre-conviction context. *Shamaeizadeh*, 82 F.3d at 398. However, in *Wallace*, the Supreme Court found that the *Heck* deferred accrual rule did not apply to false arrest claims. 549 U.S. at 393. Accordingly, in *Fox*, the Sixth Circuit found that *Wallace* had abrogated its holding in *Shamaeizadeh* with respect to the pre-conviction application of the *Heck* deferred accrual rule. *Fox*, 489 F.3d at 234. Thus, in *Fox*, the Sixth Circuit held that "[t]he statute of limitations for a claim for false arrest . . . , 'where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process.'" 489 F.3d at 235 (quoting *Wallace*, 127 S. Ct. at 1098).

Applying *Wallace* and *Fox* here, Hight is not entitled to deferred accrual of his false arrest claim. *See Powers v. Wallen*, 2013 WL 1327135, at *3 (E.D. Tenn. Mar. 29, 2013) (dismissing false arrest claim, where plaintiff did not file suit until almost two years after his arrest); *Catchings v. Frye*, 2013 WL 441600, at *3 (W.D. Tenn. Feb. 1, 2013) ("The Sixth Circuit has held that a Fourth Amendment claim based on an allegedly unlawful arrest accrues at the time of arrest.") (citing *Fox*, 489 F.3d at 233, 235); *see also Freeman v. Gay*, 2012 WL 2061557, at *20 (M.D. Tenn. June 8, 2012) (Report and Recommendation of Magistrate Judge) ("Accrual of [false imprisonment and false arrest] claims does not depend upon the termination of criminal charges in favor of a plaintiff but begins at the time when a plaintiff becomes detained pursuant to the legal process.") (citing *Wallace*, 549 U.S. at 397).

Hight appears to argue that abstention principles under *Younger v. Harris*, 401 U.S. 37

(1971), should save his otherwise untimely claims. Under the *Younger* abstention doctrine, a federal court must, absent extraordinary circumstances, abstain from hearing a federal civil rights lawsuit where adjudicating that civil case would interfere with ongoing state judicial proceedings. *See O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008). The *Younger* abstention doctrine only applies when (1) a state proceeding is currently pending; (2) the state case involves an important state interest; and (3) the state proceeding affords the plaintiff an adequate opportunity to raise constitutional claims. *See Coles v. Granville*, 448 F.3d 853 (6th Cir. 2006); *Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699, 700 (6th Cir. 2013). When a federal court dismisses an *otherwise timely* lawsuit based on *Younger* abstention principles, the federal court in its discretion may later find that, following the conclusion of the underlying state court proceedings (*i.e.*, when abstention is no longer necessary), the federal claims are entitled to tolling for purposes of the statute of limitations. *See Eidson*, 510 F.3d at 641 ("The *Wallace* court was content to entrust the matter of tolling to abstaining district courts in the exercise of their discretion on a case-by-case basis.") The Sixth Circuit has made clear that "a prerequisite to obtaining any such tolling relief, of course, *is the timely filing of the § 1983 action that will prompt abstention during the pendency of related state court proceedings*." 510 F.3d at 641 (emphasis added).

Here, when Hight filed this lawsuit, the state court proceeding had been concluded for over a year.[10] Therefore, the first abstention factor is not met, and the *Younger* abstention doctrine does not apply. Under *Eidson*, this court does not have discretion to toll Hight's otherwise untimely § 1983 claims, where Hight never filed a timely claim in the first place.

---

[10]The record does not indicate that Hight filed an appeal related to the Criminal Case.

Because Hight never filed a timely § 1983 unlawful arrest claim in the first place, "he forfeited any hope of [tolling] relief." *Id.*

Finally, Hight argues that his claims were timely under the "continuing violation" doctrine. Under the continuing violation doctrine, a court may toll limitations periods for alleged discriminatory conduct that is continuing in nature. *See Nat'l R.R. Passenger Corp. V. Morgan*, 536 U.S. 101 (2002). The doctrine applies when (1) the defendant's wrongful conduct continued after the precipitating event that began the pattern; (2) injury to the plaintiff continued to accrue after that event; and (3) further injury to the plaintiff must have been avoidable if the defendants had at any time ceased their wrongful conduct. *Eidson*, 510 F.3d at 635 (citing *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999)). Mere inaction is insufficient to satisfy the doctrine. *Eidson*, 510 F.3d at 637 (finding that doctrine was not met, where plaintiff alleged that state "continued to fail to conduct the sort of thorough investigation that would have exonerated him"). Federal courts are generally reluctant to apply the continuing violations doctrine to § 1983 actions, which generally involve discrete and identifiable injuries, including injuries stemming from a false arrest. *See Sharpe v. Cureton*, 319 F.3d 959 (6th Cir. 2003) ("This Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions."); *McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988) (refusing to consider false arrest claim as a "continuing violation"); *Mann v. Compton*, 2007 WL 854725, at *2 (E.D. Ky. Mar. 16, 2007) (holding that continuing violation doctrine did not apply to toll false arrest claim, where plaintiff remained incarcerated following arrest); *see also McCormick v. Farrar*, 147 F. App'x 716, 721-22 (10th Cir. 2005); *Petaccio v. Davis*, 76 F. App'x 442, 444-45 (3d Cir. 2003).

16

Here, the continuing violation doctrine does not apply, because Hight's injury from the allegedly false arrest was complete – and he was aware of the injury – as of the date of his false arrest, and certainly no later than June 13, 2013, when his case was bound over to the grand jury. Therefore, the continuing violation doctrine does not apply to save Hight's otherwise untimely claims.[11]

As to the state law claim for "false arrest," that claim is referred to under Tennessee law as a claim for "false imprisonment." *See Bettis v. Pearson*, 2007 WL 2426404, at *11 (E.D. Tenn. Aug. 21, 2007) (citing *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656 (Tenn. 1990)). To make out a claim for false imprisonment, a plaintiff must show "(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Coffee*, 795 S.W.2d at 659. A claim for false imprisonment is subject to the one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104. *Simmons v. Gath Baptist Church*, 109 S.W.3d 370, 373 (Tenn. Ct. App. 2003); *Crowe v. Bradley Equip. Rentals & Sales, Inc.*, 2010 WL 1241550, at *6 (Tenn. Ct. App. Mar. 31, 2010). As with a federal claim for false arrest, a false imprisonment claim accrues "at the time of the arrest and not at the time of dismissal of the charge." *Crowe*, 2010 WL 1241550, at *6 (finding that false arrest and imprisonment claim was time-barred, where plaintiff filed action more than one year after the date of his arrest); *Simmons*, 109 S.W. at 373 (same). Hight has not identified any independent basis for deferred

---

[11]Furthermore, even if the continuing violation doctrine could apply in this context, Hight has not identified any involvement by Officer Cox in the proceedings against Hight subsequent to Cox's swearing out the Affidavit of Complaint on January 31, 2011. Thus, there is no allegation that Cox engaged in any type of affirmative conduct relative to Hight's arrest and prosecution after January 31, 2011. That is, Hight has not even alleged conduct that could be construed as part of a continuing violation. *See Tolbert*, 172 F.3d at 940 ("Passive inaction does not support a continuing violation theory").

accrual or tolling of his otherwise untimely Tennessee law unlawful arrest claim. Therefore, the court will dismiss that claim on substantially the same grounds as the companion § 1983 false arrest claim.[12]

**D.    Intentional Infliction of Emotional Distress/Outrageous Conduct**

Tennessee recognizes a claim for the intentional infliction of emotional distress, which Tennessee courts typically refer to as a claim for "outrageous conduct." *See Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997). A claim for outrageous conduct has three elements: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Id.*; *see also Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (1996). "To qualify as outrageous, conduct be 'so outrageous in character, and extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Doe I v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 39 (Tenn. 2005); (quoting *Medlin*, 398 S.W.2d at 274). "[T]he outrageousness requirement is an 'exacting standard' which provides the primary 'safeguard' against fraudulent and trivial claims." *Id.* (quoting *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999)).

A claim for outrageous conduct is subject to a one-year statute of limitations under Tenn. Code Ann. § 28-3-104. *Leach v. Taylor*, 124 S.W.3d 84 (Tenn. 2004). The "discovery rule" is applicable to the tort of intentional infliction of emotional distress. *Id.* Officer Cox argues that Hight's claims are barred under the one-year statute of limitations, because, accepting the

---

[12]Because the statute of limitations bars Hight's unlawful arrest claims, the court need not address Cox's additional arguments concerning qualified immunity and collateral estoppel.

Complaint allegations as true, Hight knew or should have known of his injuries well before the dismissal of the criminal case. Hight has failed to address this argument, which alone constitutes grounds for dismissal. Furthermore, even if it were appropriate to address the merits of his allegations concerning this claim, the Complaint allegations establish that Hight knew or should have known of his injuries from any affirmative conduct by Officer Cox no later than June 13, 2011, when his case was bound over to the grand jury.[13] Furthermore, as discussed in a previous section, Hight does not allege any affirmative conduct by Officer Cox after Cox swore out the Affidavit of Complaint in late January 2011. Therefore, Hight's outrageous conduct claims, which were not filed until April 19, 2013, are time-barred.[14]

### E. Malicious Prosecution

To succeed on a federal claim for malicious prosecution, a plaintiff must show: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty; and (4) that the criminal proceeding was resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 305, 308-309 (6th Cir. 2010). A Tennessee state law malicious prosecution claim relies on similar but not identical elements: requiring a plaintiff to "show that the defendant, with malice, initiated legal proceedings against him without probable cause, and that those proceedings terminated in his favor." *Donaldson v. Donaldson*, 557 S.W.2d 60 (Tenn.

---

[13]The court need not decide whether, as a matter of law, Hight's claim may have accrued even earlier, on February 7, 2011, the date of his arrest.

[14]Because the statute of limitations bars Hight's outrageous conduct claim, the court need not address Cox's alternative argument that Hight has otherwise failed to state a claim.

1977).  For purposes of his motion, Cox disputes only the "lack of probable cause" element, arguing that (1) Hight has failed to allege sufficient facts to articulate a malicious prosecution claim against Officer Cox, and/or (2) the state court finding of probable cause precludes Hight from relitigating the issue here under the doctrine of collateral estoppel.  Cox also argues that, in the alternative, Hight's "release dismissal" agreement bars his claims entirely.

"[A]n officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant."  *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (quoting *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)).  Thus, "[a] finding of probable cause in a preliminary state criminal hearing does not have preclusive effect in a subsequent civil action for malicious prosecution when there is evidence of false statements or misrepresentations by law enforcement officials during the criminal proceedings."  *Shipp v. United States*, 212 F. App'x 393, 399 (6th Cir. 2006) (applying Tennessee law); *see also Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (finding that, for collateral estoppel purposes, a state court's determination of probable cause at a probable cause hearing is not "identical" to the issue of whether an officer "made materially false statements to a state judge that formed the basis of the judge's probable cause determination."); *Buttino v. City of Hamtramck*, 87 F. App'x 499, 504 (6th Cir. 2004); *Zulock v. Shures*, 441 F. App'x 294, 303-304 (6th Cir. 2010); *Day v. Ingle's Markets, Inc.*, 2006 WL 239290, at *6 (E.D. Tenn. Jan. 25, 2006) (applying Tennessee law).

Here, Hight has failed to allege sufficient facts to support a malicious prosecution claim against Officer Cox.  Nowhere in Hight's Complaint does Hight squarely allege that any

statement in Officer Cox's affidavit was actually false or materially misleading. Hight does allege that Officer Cox filled out the warrant in retaliation for Hight's filing grievances against Officer Cox (Compl. at p.10), that "the police lacked probable cause to arrest him" (Compl. at p. 9), that "[t]he arrest of the Plaintiff was illegal and punitive in nature," (Compl. at p.10), and that AAG Abbott continued to prosecute Hight "despite the lack of any evidence that a crime had been committed." None of these statements, even if true, alleges that the warrant itself actually contained any misrepresentations, materially misleading statements, or material omissions of fact. Furthermore, Hight has failed to allege which, if any, of these allegedly false or misleading statements the General Sessions court relied upon in making a finding of probable cause. Thus, Hight has not sufficiently alleged that, but for any false or misleading statements by Officer Cox, the General Sessions court would not have made a finding of probable cause. Therefore, Hight has failed to state a claim for malicious prosecution under federal or Tennessee law.

If Hight's theory is actually that Officer Cox lied in the affidavit and that the court would not have made a probable cause finding without relying on Cox's misrepresentations, Hight has failed to allege that theory in a manner that sufficiently places Officer Cox on notice of the allegations supporting a malicious prosecution claim. Given that, unlike the other claims, Hight is not necessarily barred from asserting a malicious prosecution claim against Officer Cox, the court will grant Hight the opportunity to amend his allegations concerning that claim. If Hight chooses to file an Amended Complaint against Officer Cox within the time period allowed by the court, the defendants may assert any applicable defenses thereto, including the application of the collateral estoppel doctrine and their argument that Hight's release-dismissal agreement bars the claims. Because the court finds that Hight has failed to state a claim, the court need not reach

Hight's alternative arguments concerning the collateral estoppel doctrine and the enforceability of the release-dismissal agreement.[15]

## CONCLUSION

For the reasons stated herein, the Motion for Judicial Notice will be granted and the defendants' Motions to Dismiss will be granted. Hight's claims for malicious prosecution against Officer Cox are dismissed without prejudice, Hight's remaining claims are dismissed with prejudice, and the court will grant Hight leave to re-plead his malicious prosecution claims against Officer Cox.

---

[15]The court notes that, although the Supreme Court has found that a release-dismissal agreement can be enforceable under appropriate circumstances, *see Town of Newton v. Rumery*, 480 U.S. 386 (1987), the Sixth Circuit has consistently found that a party seeking to enforce the agreement must establish by a preponderance of the evidence that (1) the agreement was voluntary; (2) there was no evidence of prosecutorial misconduct; and (3) enforcement of the agreement will not adversely affect relevant public interests. *See Coughlen v. Coots*, 5 F.3d 970, 974 (6th Cir. 1993) (reversing and remanding for further proceedings, where district court erroneously had presumed that release-dismissal agreement was valid and enforceable); *MacBoyle v. City of Parma*, 383 F.3d 456, 459-462 (6th Cir. 2004) (affirming district grant of summary judgment to defendants, where evidence showed that relevant factors were met); *Friebus v. Kifer*, 47 F. App'x 699 (6th Cir. 2002) (finding that district court appropriately refused to enforce release-dismissal agreement because, notwithstanding jury's finding that release was voluntary, jury issued verdict that officer had actually used excessive force in incident subject to the release). To the extent that additional evidence outside the pleadings would be required to satisfy the required burden (or to refute it), the issue could warrant discovery, factual submissions (thereby moving outside the Rule 12 context), and/or an evidentiary hearing. At the same time, the court is somewhat perplexed by Hight's position, because the same attorney (Mr. Sirgo) who signed the release-dismissal on his behalf in the Criminal Case is representing him here. This means that Mr. Sirgo, one year after signing the release-dismissal agreement on Hight's behalf, filed this lawsuit in violation of the release-dismissal agreement's terms. At any rate, because Hight has failed to state a claim for malicious prosecution in his Complaint, the court need not address those issues here.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge